Barnard, P. J.
The testator died on the 6th of November, 1884, at the age of ninety years and upwards. He left two testamentary papers, a will and a codicil to it. The will was executed in September, 1881. As to this paper there was no objection.
By the assent of the parties at the execution of the paper the testator had testamentary capacity, The codicil was executed on the 3d of July, 1883, and the only change made in the will is to reduce the amount of one legacy. The testator had two children. Specific bequests of land were made to each. A legacy of $20,000, was given to a daughter. The grandchildren by son and daughter, were equally remembered, and then the son was made residuary legatee. There is proof tending to show that the testator intended by the will to divide his property equally.
By the codicil the $20,000 legacy to the daughter was reduced to $10,000. So that the apparent effect of the will is to create an inequality between the value of the property given to the son and daughter as the $10,000 reduction benefits the residuary clause. There is proof tending to show that the testator directed the codicil to remedy an inequality which existed in the will. That the $20,000 was too much for the daughter in view of the value of property devised by the will. That the farm given to the son had depreci *41 ated, and that the securities had fallen. So far the codicil is reasonable in itself, and as a part of the will was, in the opinion of the testator, a just will in its entirety, as between his children.
The codicil was executed in due form and was witnessed by two intelligent witnesses, who manifestly had no connection with the will or codicil in any way. They represent the testator as rational, self-contained, and deliberate in and about the transaction of the business, and wholly free from all restraint. The case still shows a strong contradiction between many witnesses. Three witnesses testify as to manner of life and condition of health, and the mental condition exhibited both before and after the execution of the codicil. From all the evidence it is certain that the testator lived his life unvisited by any one; that he did his ordinary pecuniary business, receiving his income and depositing it in his own name, and paying his obligations therefrom up to a short time before his death. He was daily and generally alone in the streets of New Rochelle, where he resided. He was kindly noticed by Ms acquaintances; he had strong views on politics and economy in public expenditures, and he freely expressed them. This is Ms condition substantially from all the witnesses. There are witnesses who testify to facts tending to show incapacity, and very much of this evidence is based upon three facts: The testator was weak in his legs and fell down easily. Fie had a rose cancer on his face, which bled easily and annoyed him, and Ms memory of persons and faces was bad.
The weakness in his legs is so completely proven to have been a physical defect and weakness therein, that no basis of incapacity can be raised thereon.
So also the cancer is proven to have been so troublesome and annoying that his complaints in respect thereto were entirely natural and intelligent. There was no such proof of forgetfuMess as to justify a finding of unsoundness and incapacity. It is not an unusual thing in old men. It was not pertinent, for the proof is abundant that both before and after the date of the codicil the testators memory of faces, localities and events was unclouded to a remarkable degree in so old a man. He was easily affected in his feelings, and the death of his wife and the clergyman’s allusion to death was the means of his losing control of Ms feelings, but on other times and on other ocasions he had full self-control and a remarkable possession of his mental faculties including his self-control. The order admitting the codicil to probate is therefore, fully supported by the evidence, and should be affirmed, with costs to respondent.
Dykman, J.. concurs.